**LUCRE CORPORATION,**
**Appellant–Defendant,**

**v.**

**COUNTY OF GIBSON, State of**
**Indiana, Appellee–Plaintiff.**

**No. 63A04–9406–CV–250.**

Court of Appeals of Indiana.

Nov. 2, 1995.

Rehearing Denied Jan. 10, 1996.

---

Jeffrey A. Wilhite, Richard O. Hawley, Jr., Kahn, Dees, Donovan & Kahn, Evansville, for appellant.

Theodore J. Nowacki, J. Greg Easter, Bose McKinney & Evans, Indianapolis, Jerry D. Stillwell, Princeton, for appellee.

### OPINION

RILEY, Judge.

Defendant–Appellant Lucre Corporation (Lucre) appeals from a judgment awarding it compensation for the appropriation of its property by Gibson County (County).

We affirm.

### ISSUES

Lucre presents four issues for our review which we restate and consolidate as:

1. Did the trial court err by excluding evidence offered by Lucre?

2. Did the judgment deprive Lucre of just compensation based on the highest and best use of its property?

3. Did the judgment awarding compensation to Lucre violate an earlier bifurcation order?

### FACTS

Lucre owned 261 acres of unimproved property which was the site of an abandoned strip mining operation located in Gibson County, Indiana. In 1992, the County hired an engineer to find a new landfill site to meet its future needs. Lucre's property was found to be suitable as a landfill and the County offered to purchase Lucre's property. When the County was unable to negotiate a purchase price, it sought to take the property by eminent domain. Towards that end, on March 24, 1992, the County filed a complaint for condemnation.

During a trial held on November 29, 1993, the jury heard testimony from experts who valued Lucre's property from $130,000.00 to $6,000,000.00. In addition, testimony revealed that as of the date of taking, no landfill operations were conducted or permitted under applicable law on the property, neither were other income-producing operations conducted on the property at that time. However, testimony did reveal that the highest and best use of Lucre's property was as a landfill.

The jury assessed the damages to Lucre in the amount of $130,500.00. It is from this judgment that Lucre now appeals.

### DISCUSSION

#### I.

Lucre contends that the trial court erred by unduly restricting Lucre's testimony regarding the value of its property.

The admission of evidence is a matter of trial court discretion. *Eversole v. Consol. Rail Corp.* (1990), Ind.App., 551 N.E.2d 846, 854, *reh'g denied, trans. denied.* We will reverse a trial court decision on the admission of evidence only for an abuse of discretion, which occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn from those facts and circumstances. *Id. Myers v. Myers* (1990), Ind., 560 N.E.2d 39, 42. "The term 'discretion' implies the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances." *Stone v. State* (1989), Ind.App., 536 N.E.2d 534, 538, *trans. denied.* Thus, matters committed to the discretion of the trial court are those requiring an on-the-spot decision to be made in light of

the trial judge's knowledge, sense of fairness and equity, and the facts and circumstances present in the courtroom. *See id.*

Lucre argues that his expert valuation witness should have been able to testify as to the value of the property utilizing the capitalization approach to valuation. "[T]here have not been an abundance of recent landfill sales in Gibson County, the jury should have heard testimony that the capitalization approach is used in the market regardless of where the property is located and regardless of whether a landfill is currently operating." Appellant's Brief at 7–8. We note that Lucre does not support this assertion with authority from this jurisdiction or elsewhere.

■ Capitalization is one of three well recognized methods of determining a property's fair market value taken by eminent domain. *Annon II, Inc. v. Rill* (1992), Ind.App., 597 N.E.2d 320, 326, *reh'g denied, trans. denied.*[1] It is a method of computation which gives value to the land in relation to the income it produces. *State Highway Comm'n v. Jones* (1977), 173 Ind.App. 243, 245, 363 N.E.2d 1018, 1021.

> [It] usually consists of arriving at an independent value of the land involved and adding to it the value of improvements arrived at by process of capitalization, i.e., converting reasonable or actual income at a reasonable rate of return (capitalization rate) into an indication of value. Land and improvements may be capitalized together in a single process.

4 Sackman, Nichols on Eminent Domain Sec. 12.32(3)(c), at 12–577 (3d rev. ed. 1981) (Parentheses supplied).

■ In *J.J. Newberry Co. v. City of East Chicago for and on Behalf of Dept. of Redevelopment* (1982), Ind.App., 441 N.E.2d 39, 42, we found that a "proper application of the capitalization of income method requires that 'the property is in good condition and capable of producing the income to be capitalized.'" *Id.* at 42 (quoting 29A C.J.S. Eminent Do-

main Sec. 168(2), at 724–25 (1965)). Further, "'income cannot be capitalized to produce a residual value where the appropriated land is neither producing income nor equipped to do so.'" *Id.* Although Lucre's property was found to be suitable for landfill use, it was neither improved nor producing income as a landfill or otherwise as of the date of taking. The trial court precluded evidence of the capitalization value of the property because the property was currently not producing income. We cannot, in light of our precedent, say that the trial court abused its discretion in excluding this testimony. *See also Jones,* 173 Ind.App. at 254, 363 N.E.2d at 1025 (The capitalization method of determining value was admissible because the case involved the appropriation of land suitable for quarrying which was a part of an ongoing quarrying operation. The capitalization of income was not used to project future profits and to compensate the owner for lost profits, but rather it was used to calculate the fair market value of the land at the time of the taking.).

Lucre also offered as evidence an option agreement which contained a $2,000.00–per–acre price for the property. In 1978, the City of Evansville paid $1.00 for an option to purchase Lucre's property for $2,000.00 an acre. The option had to be exercised by November 11, 1978, but could be renewed until January 11, 1979 for an additional $2,000.00. The agreement was neither renewed nor exercised by Evansville. Although the trial court allowed the option document into evidence, Lucre argues that it erred when it redacted the amount of the offer.

■ Although Indiana courts have not addressed the admissibility of an option agreement to prove value directly, precedent suggests that option agreements are inadmissible to prove value. A mere offer to sell is properly excluded as evidence of value. *Warren v. Wheeler* (1991), Ind.App., 566

---

**1.** In *Ohio Casualty Ins. v. Ramsey* (1982), Ind. App., 439 N.E.2d 1162, 1167, this court set out three methods of determining a property's fair market value taken by eminent domain: "(1) the current cost of reproducing the property less depreciation from all sources; (2) the 'market

data' approach or value indicated by recent sales of comparable properties in the market, and (3) the 'income-approach,' or the value which the property's net earning power will support based upon the capitalization of net income." *Id.*

N.E.2d 1096, 1099, *trans. denied; State v. Lincoln Memory Gardens, Inc.* (1961), 242 Ind. 206, 177 N.E.2d 655. In *Lincoln Memory Gardens,* the trial court excluded testimony of an offer to sell property in a condemnation case, and our supreme court affirmed this decision holding:

> A mere offer to buy or sell property is not a measure of the market value of a similar property. It is incompetent to prove the market value of the property because the asking price is only the opinion of one who is not bound by his statement, and is too unreliable to be accepted as a correct test of value.

*Id.* at 213, 177 N.E.2d at 658. Further, in *Gradison v. State* (1973), 260 Ind. 688, 300 N.E.2d 67, our supreme court upheld a trial court's refusal to admit a proposed lease by a gravel-mining company to lease a portion of property at a stated sum per acre because the lease "would have imposed no obligation upon the offeror, until such time as it elected to exercise its rights thereunder. It was, therefore, more in the nature of an option than of a binding lease or sale." *Id.* at 710, 300 N.E.2d at 82. The court in *Gradison* also stated that "[w]e are aware that a few other jurisdictions have, under circumstances where there was no better evidence offered, accepted evidence of bona fide offers under rigid standards.... We have not previously admitted such evidence and, although not determinative upon the issues in that case, we indicated in *Marposon [] v. State []* (1982), [259] Ind. [426], 287 N.E.2d 857, that we probably would not." *Gradison,* 260 Ind. at 710, 300 N.E.2d at 82. Considering our precedent, we cannot say the trial court in this case abused its discretion when it redacted the option price from the agreement.

■ Lucre further argues that offers have been held to be admissible to prove the existence of an active market or demand for the property, and to support the feasibility of a property's highest and best use. *See* Appellant's Brief at 13. However, in this case the unexercised Evansville option was over four-

teen years old, and thus, not indicative of the market at the time of the taking, and the record reveals ample testimony to the use of the property as a landfill. Further, the option was admitted, albeit redacted, and was available to prove any issue, save valuation of the property. We see no error here.

■ Lucre next argues that the trial court erred by omitting evidence of a recent sale of property. However, Lucre neglects to provide citation to authority in support of this claim or cogent argument on this issue. Therefore, consideration of this issue has been waived. Ind.Appellate Rule 8.3(A)(7); *J.L. v. Mortell* (1994), Ind.App., 633 N.E.2d 300, 303, *trans. denied.* Notwithstanding waiver, Lucre's assertion cannot succeed.

■ "Evidence of sales made subsequent to the taking are not admissible unless made almost simultaneously with the taking." *Gradison,* 260 Ind. at 705, 300 N.E.2d at 79. The property sale in question took place in October, 1993, more than a year and a half after March 24, 1992, the date of the taking of Lucre's property. We cannot find that the trial court exclusion of this evidence was in error.[2]

■ Lucre argues that the trial court erred by omitting evidence of the "unique market demand for landfill sites at the time of the taking." Appellant's Brief at 5. To prove a market perception of a heightened demand for landfill sites, Lucre offered a collection of newspaper articles, some of which were undated and at least one which was published after the date of the taking, discussing landfill capacity problems in the surrounding counties. The trial court sustained the County's objection on the basis of hearsay; however, Lucre argues that the articles were not offered for their truth, but rather for the fact that they existed citing *Kucki v. State* (1985), Ind.App., 483 N.E.2d 788, 791, *reh'g denied.* Considering that Lucre's expert testified about the situation discussed in the newspaper articles, and there was no dispute that publication occurred, any

---

2. We also note that in the Appellant's Reply Brief, Lucre asserts that the County has waived this argument by only objecting to this evidence on the basis that is did not have sufficient notice of the sale. This is an inaccurate portrayal of the County's argument before the trial court. *See* (R. at 576).

error in the trial court's refusal to admit the exhibit was harmless. *Powers v. Gastineau* (1991), Ind.App., 568 N.E.2d 1020, 1026, *trans. denied.*

Finally, Lucre contends that the trial court erred in not allowing Lucre to introduce a Department of Natural Resources mine map. Appellant's Brief at 6. It argues that the mine map was self-authenticating pursuant to Ind.Trial Rule 44(A)(1). "An official record 'may be evidenced by an official publication thereof *or* a copy attested by the officer.'" Appellant's Brief at 23 (quoting T.R. 44(A)(1)) emphasis in Brief. Thus, Lucre argues that a document is self-authenticated by merely being an official publication. We cannot agree.

█ As we read T.R. 44(A)(1), and as it has been generally understood by reviewing courts, authentication for the admission of an official record requires an officer having custody of the record to attest, by testimony or by certification, that it is the official original record, or a true and accurate copy thereof. *Liberty Nat. Bank and Trust v. Payton* (1992), Ind.App., 602 N.E.2d 530, 533; *Kelly v. State* (1990), Ind., 561 N.E.2d 771, 773. The single case that Lucre cites to support his theory merely recites the trial rule, without advocating Lucre's argument. *See Elridge v. State* (1977), 266 Ind. 134, 138, 361 N.E.2d 155, 158, *cert. denied* 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287. The trial court did not err by refusing to admit the mining map without proper authentication.

## II.

Lucre contends that it is entitled to just compensation based exclusively on the property's highest and best use, and the County's argument to base compensation on current use is contrary to law. Lucre argues that (1) the judgment is contrary to the undisputed highest and best use evidence, and (2) that the trial court's highest and best use instruction was erroneous.

█ When land which is taken by condemnation has a fair market value at the time of its appropriation, the measure of damages is the fair market value for which the land could be sold if an owner was willing to sell and a buyer willing to buy, neither under compulsion to do so. *City of Lafayette v. Beeler* (1978), 178 Ind.App. 281, 287, 381 N.E.2d 1287, 1291. If property has a higher market value by reason of uses to which it may be adapted, but to which it has not been put, the owner is entitled to a greater value. *Id., State v. City of Terre Haute* (1968), 250 Ind. 613, 617, 238 N.E.2d 459, 461. The market value of the condemned property insofar as that value is presently enhanced by the property's adaptability for some use may be shown, but the possible future value of the specific future use may not be proven. *Beeler,* 178 Ind.App. at 289, 381 N.E.2d at 1292.

█ Judge Miller in *Beeler,* as well as our supreme court in *State v. Tri–State College,* (1972), 258 Ind. 307, 311, 280 N.E.2d 813, 815, quoted 11 ILE Eminent Domain, (1958) as instructive on this issue:

> It has long been the established rule in determining the value of property taken by condemnation or appropriation the availability and adaptability of the property for uses other than that to which it is applied at the time of taking, may be taken into consideration. The pre-existing use of the land is not the sole criterion by which its value is measured.

> However, it is equally well settled that the inquiry as to damages cannot go into an intended specific use, because such damages are speculative, and that such inquiry must be confined to the land with reference to its use and condition at the time of taking and not as to what use the owner might be contemplating to put it.

*Beeler,* 178 Ind.App. at 291, 381 N.E.2d at 1293. Thus, the issue before the jury was the value of the land on the date of the taking. Consideration may be given to the property's potential use and value, but future improvements may not be compensated for because they were not then in existence. *Southern Indiana Gas & Electric Co. v. Riley* (1973), 260 Ind. 643, 645, 299 N.E.2d 173, 175; *see also State v. Maplewood Heights Corporation* (1973), 261 Ind. 305, 308, 302 N.E.2d 782, 785; *State v. Raymond E. Heinold Family Trust* (1985), Ind.App., 484 N.E.2d 595, 598, *reh'g denied, trans. denied.*

It is undisputed that on the date of the taking, Lucre's property was unimproved, abandoned, strip-mined land. Although suitable for use as a landfill, there was no landfill operation, in fact, Lucre did not have a landfill permit at the time of the taking. The County's expert testified that he valued the property by comparing it to other similar land sales in Gibson County. Lucre offered testimony that the highest and best use of the land was as landfill, as well as testimony of the value of other landfill properties in various locations.

■ Generally, we will not disturb an award of damages in an eminent domain proceeding where the award is within the bounds of the probative evidence adduced at trial. *Heinold Family Trust,* 484 N.E.2d at 597; *Beyer v. State* (1972), 258 Ind. 227, 236, 280 N.E.2d 604, 610; *City of Indianapolis v. Schmid* (1968), 251 Ind. 147, 152, 240 N.E.2d 66, 69. On review of such an award, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses. *City of Elkhart v. No–Bi Corp.* (1981), Ind.App., 428 N.E.2d 43, 45. The evidence will be looked at in a light most favorable to the judgment. *Id.*

■ While these rules tend to give great deference to damage awards in eminent domain cases because of the factfinder's ability to hear the evidence and judge the credibility of witnesses first hand, a jury may not base its verdict upon their independent knowledge of values. *Gradison,* 260 Ind. at 705, 300 N.E.2d at 74–75. "[I]f the testimony of value and damages is conflicting, the jury may resort to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony, but their assessment must be supported by testimony, or it cannot stand." *Id.*

■ The record reveals that the experts valued Lucre's property from $130,000.00 to $6,300,000.00; the jury determined Lucre's damages to be $130,500.00. The award was within the bounds of the probative evidence adduced at trial, thus we see no error here. *See Annee v. State* (1971), 256 Ind. 686, 689, 271 N.E.2d 711, 712, *reh'g denied* (jury

award of $210,000.00 "clearly falls within the bounds of the probative evidence" where opinions ranged from $171,700,00 to $541,-000.00); *Caito v. State* (1973), 157 Ind.App. 679, 683, 301 N.E.2d 376, 377 (upholding jury award of $317.00 which was in conformity with testimony of the State's only expert where damages testimony ranged from $317.00 to $45,000.00).

■ Lucre also complains about Instruction 8A given by the trial court. Instruction 8A reads:

> In determining the amount of compensation that Lucre corporation is entitled to recover as a result of the taking, you may consider any evidence that affects the value on the date of taking in arriving at a fair market value. However, the inquiry as to the value of the land cannot go into an intended specific use, because such damages are speculative, and that such inquiry must be confined to the land with reference to its condition at the time of taking.

(R. at 504, 1707). Lucre argues that this instruction

> tells the jury it "must" confine its inquiry to the "condition" of the land "at the time of taking." That is an incorrect statement of the law. In order to award just compensation, a land's "current condition" cannot restrict the award. Certainly the land must at the time of take with reasonable adaption be capable of having the higher use, but the essence of a highest and best use analysis is to look prospectively at a reasonable adaptation of current condition. 8A prohibits that prospective reasonable adaption analysis. The instruction is also an "intended specific future use instruction," but there was no such claim at trial.

Appellant's Brief at 21–22.

We cannot agree with Lucre's argument. As we have discussed, Instruction 8A is a correct statement of the law. Further, Lucre's argument regarding "reasonable adaptation" as a component of valuation fails to take into consideration Instruction 8, read to the jury immediately prior to 8A, which states:

The past or present use to which the land is put is not the only criterion to be considered in determining its value. In determining the amount of the compensation that the landowners are entitled to recover as a result of the taking, you may consider the highest and best use for which the property is available and could reasonably be adapted at the time of the taking by Gibson County, Indiana.

(R. at 503, 1706). We see no error here.[3]

### III.

 Finally, Lucre contends that the trial court's judgment erroneously fails to indicate that compensation for Lucre's mineral rights remain an issue to be adjudicated at a future date. We do not agree.

On November 17, 1993, the court issued an Agreed Bifurcation Order which states, in part:

> that the issue of the compensation that the landowner may be entitled to for the direct or inverse appropriation of, or damage to, any mineral interest and rights in, or related to, the subject real estate or the direct or inverse appropriation of, or damage to, the real estate considering such mineral interests and rights, is hereby bifurcated from the November 29, 1993 trial and is reserved to be decided at a later date which shall be set by the Court.

(R. at 370). The Entry of Final Judgment on Exception of Defendant to Report of Appraiser, issued on February 24, 1994, awarded Lucre $130,500.00. The judgment regarded "the issue of the value of the property taken by Plaintiff" and does not prevent the remaining issue of compensation for Lucre's mineral rights from being set for trial. Further, Lucre does not complain that the trial court refused to set the remaining issue for trial, nor does the county argue that the Entry of Final Judgment included the value

of the mineral rights. Thus, we see no reason to amend the trial court's judgment.

Judgment affirmed.

SHARPNACK, C.J., and BARTEAU, J., concur.

---

**3.** Lucre also claims that the trial court erred in refusing to give its Tendered Instruction No. 2, which reads:

> The landowner is entitled to recover all damages, present or prospective, that are a natural or reasonable result of the taking.

(R. at 493). Although Lucre correctly points out that this instruction is based on Indiana Pattern Jury Instructions 29.19, in this case the sub-stance of the tendered instruction was adequately covered by others given by the trial court, that is, Final Instructions 8 and 8A and thus, the trial court properly refused it. *See City of Lake Station v. Rogers* (1986), Ind.App., 500 N.E.2d 235, 241. We also note that Lucre fails to state "whether the refusal to give the instruction resulted in prejudice to the party who tendered it." *Id.* at 240.